UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X

ARCHIE PRATT,

                                             Plaintiff,

                  -against-

CITY OF NEW YORK; P.O. GERARD FENTON,
(Shield No. 6680), in his individual and official capacity;
and P.O. JAMES BURNETT (Shield No. 11314), in his
individual and official capacities,

                                   Defendants.

------------------------------------------------------------------------X

**FIRST AMENDED
COMPLAINT**

JURY TRIAL DEMANDED

15-cv-04095 (RRM) (JO)

     Plaintiff, ARCHIE PRATT, by his attorney, Steven E. Lynch, alleges for his

complaint against the defendants as follows:

## PRELIMINARY STATEMENT

     1.     Plaintiff brings this action for compensatory damages, punitive damages,

and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his

civil rights guaranteed by the Constitution of the Unites States.

## JURISDICTION

     2.     This action is brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 and the

Fourth and Fourteenth Amendments to the United States Constitution.

     3.     Jurisdiction is founded upon 28 U.S.C. §§ 1331 and 1343.

## VENUE

     4.     Venue is properly laid in the Eastern District of New York under 28 U.S.C.

§ 1391(b)(2), in that this is the District in which the events or omissions underlying the claim

arose.

## JURY DEMAND

5.      Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## PARTIES

6.      The plaintiff is an African-American male and was at all relevant times a citizen of the City and State of New York.

7.      Defendant, the City of New York, was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

8.      Defendant, the City of New York, maintains the New York City Police Department, a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, the City of New York.

9.      At all times hereinafter mentioned, the individually named defendants, P.O. Gerard Fenton and P.O. James Burnett, were duly sworn police officers of said department and were acting under the supervision of said department and according to their official duties.

10.      At all times hereinafter mentioned, the defendants, either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

11.      Each and all of the acts of the defendants alleged herein were done by said defendants while acting within the scope of their employment by defendant City of New York.

12.     Each and all of the acts of the defendants alleged herein were done by said defendants while acting in furtherance of their employment by defendant City of New York.

## FACTS

13.     On or about June 29, 2014, at approximately 7:51 p.m., plaintiff was with two (2) friends and talking to a neighbor in the vicinity of 1170 Lincoln Place, Brooklyn, New York.

14.     Police Officer Gerard Fenton and P.O. James Burnett approached plaintiff's friends.

15.     P.O. James Burnett told plaintiff to open his mouth and accused plaintiff and his friends of "smoking."

16.     P.O. James Burnett told plaintiff, who was approximately one and half car lengths away from his friends, to stand next to his friends.

17.     Upon P.O. James Burnett's request, plaintiff provided his identification.

18.     After plaintiff reads aloud Police Officer Fenton's shield number, P.O. Fenton said "I wasn't locking you up, but I'm locking you up now."

19.     Plaintiff was transported to the 77th Precinct, 127 Utica Avenue, Brooklyn, New York 11213.

20.     On or about June 30, 2014, Plaintiff was charged under docket 2014KN048312 with Penal Law section 110/215.40(2) attempted tampering with physical evidence.

21.     Subsequently, all charges against plaintiff were adjourned in contemplation of dismissal.

22.     As a result, the plaintiff's criminal case was dismissed and sealed.

### FIRST CAUSE OF ACTION
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violations for Unlawful Stop and Search*
(Against the Individual Officer Defendants)

23.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

24.     Defendants violated the Fourth and Fourteenth Amendment because they stopped plaintiff without reasonable suspicion.

25.     As a result, plaintiff sustained the damages alleged herein.

## SECOND CAUSE OF ACTION
*42 U.S.C. § 1983 – Fourth and Fourteenth Amendment Violation for False Arrest*
(Against the Individual Officer Defendants)

26.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

27.     As a result of defendants' aforementioned conduct, the plaintiff was subjected to an illegal, improper, and false arrest.  The plaintiff was taken into custody and caused to be falsely imprisoned, detained, confined, and incarcerated.  In the above-mentioned actions, defendants acted intentionally, willfully, with malice, and without probable cause, privilege or consent.

28.     Plaintiff was conscious of his confinement.

29.     As a result of the foregoing, plaintiff's liberty was restricted in filthy and degrading conditions for an extended period of time, plaintiff was put in fear for his safety, was humiliated and subjected to handcuffing, and other physical restraints, without probable cause.

30.     By virtue of the foregoing, the defendants deprived the plaintiff of his Fourth Amendment rights under the United States Constitution to be free from unreasonable seizures of his person and are liable to plaintiff under 42 U.S.C. §1983.

f

### THIRD CAUSE OF ACTION
*42 U.S.C. § 1983- Fifth and Fourteenth Amendment Violations*
*for Fabrication of Evidence*
(Against the Individual Officer Defendant Fenton)

31.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

32.     Defendant Fenton created false evidence against the plaintiff and drafted or signed sworn criminal complaints and false police reports.

33.     Defendant Fenton forwarded to prosecutors fabricated and false evidence that was likely to influence a jury's decision.

34.     Defendant Fenton knowingly and intentionally provided false evidence against plaintiff in legal proceedings.

35.     By virtue of the foregoing, Defendant Fenton deprived the plaintiff of his Fifth and Fourteenth Amendment rights under the United States Constitution to due process and to a fair trial and are liable to plaintiff under 42 U.S.C. §1983.

### FOURTH CAUSE OF ACTION
Municipal Liability
(Against Defendant City)

36.     Plaintiff repeats, reiterates, and realleges each and every allegation contained in the preceding paragraphs with the same force and effect as if fully set forth herein.

37.     The City's continuing failure to deter police misconduct has led to ever increasing numbers of lawsuits for repeated misconduct by the same officers, same units, and same precincts. In the fiscal year of 2012, there were 2,004 tort cases commenced against the New York City Police Department, up from 1,425 tort cases commenced for the fiscal year of 2008.[1]

---

[1]   Fiscal 2013 Preliminary Mayor's Management Report for the New York City Police Department, available at www.nyc.gov/html/ops/downloads/pdf/mmr0912/nypd.pdf, see page 5, last visited on January 24, 2014.

The City of New York has paid at least $80 million for torts against the New York City Police Department since the fiscal year of 2008, peaking in fiscal year of 2009 when it paid out more than $117 million.[1]  In the past ten years, the City of New York has paid nearly a billion dollars on lawsuits brought against the NYPD.[2]

38.    The widely held assumption is that civil rights lawsuits deter police misconduct. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." Wyatt v. Cole, 504 U.S. 158, 161, (1992) citing Carey v. Piphus, 435 U.S. 247, 254-257, (1978). "As far as we know, civil liability is an effective deterrent [to civil rights violations], as we have assumed it is in other contexts." See Hudson v. Michigan  547 U.S. 586, 598 (2006) citing Correctional Services Corp. v. Malesko, 534 U.S. 61, 70 (2001) and Nix v. Williams, 467 U.S. 431, 446, (1984). "It is almost axiomatic that the threat of damages has a deterrent effect (citation omitted) surely particularly so when the individual official faces personal financial liability." Carlson v. Green, 446 U.S. 14, 21, (1980), citing Imbler v. Pachtman, 424 U.S. 409, 442, and footnote 6 (1976).

39.    However, the City of New York has isolated NYPD officers like P.O. Gerard Fenton and P.O. James Burnett from accountability for civil rights lawsuits by indemnifying officers who violate the constitutional rights of citizens, and, as a result, is preventing civil rights lawsuits from having any deterrent value to the City, the NYPD or its officers.  Civil rights lawsuits against police officers have no impact on the officers' careers, regardless of the expense to the City of the officers' lawsuit liability, even after multiple lawsuits.  In 1999, former

---

[2]   "NYPD gives quite the payday; AP report reveals police have dolled out $1B to resolve lawsuits," by Associated Press Writers Colleen Long and Jennifer Peltz via Daily News wire Report, http://www.nydailynews.com/new-york/nypd-payday-ap-report-reveals-police-dolled-1b-resolve-lawsuits-article-1.189671, October 15, 2010 last visited on January 27, 2014.

Comptroller Alan Hevesi reported that there was a "a total disconnect" between the settlements of even substantial civil claims and police department action against officers.[3] This "total disconnect" between officers' liability and NYPD discipline, results in a system where the City pays vast sums to settle false arrests, but the NYPD does nothing to investigate nor address the underlying causes of such false arrests or officers who have incurred large sums of civil rights liability.

40.     The City Council, Government Operations Committee, despite being alerted at a City Council hearing on December 12, 2009, and on other occasions, to the obvious problem of officers and precincts with a disproportionate responsibility for civil rights lawsuit liability, has failed to take action to hold officers or precincts accountable. It has likewise failed to hold an investigative hearing into what extent specific officers, units and precincts are disproportionately responsible for New York City civil rights lawsuits.

41.     Nevertheless, the City has repeatedly resisted attempts to catalog even basic information gleaned from civil rights lawsuits that could improve training, leadership, supervision, and discipline in the NYPD.  The City's deliberate indifference towards the contents of civil rights litigation, individual officers repeatedly named in lawsuits, incidents repeatedly occurring in the same division, and patterns of misconduct that arise in civil rights litigation has caused the constitutional violations of excessive force and false arrest suffered by the plaintiff.

42.     Further, the City has no procedure to notify individual officers or their supervisors of unfavorable judicial review of their conduct or to calculate the total liability of an individual officer or of a precinct.  Without this notification, improper search and seizure practices and

---

[3] Bob Hennelly's WNYC report, "Amid City Budget Crisis, New Scrutiny on Millions in NYPD Settlements" from June 8, 2011: http://www.wnyc.org/articles/its-free-country/2011/jun/08/amid-city-budget-grappling-new-scrutiny-millions-nypd-settlements/, last visited on January 27, 2014.

incredible testimony go uncorrected, problematic supervision or leadership at the precinct level goes ignored, and repeated misconduct by individual officers goes unaccounted for.  Even occasional judicial findings that officers have testified incredibly are not reported routinely to the police department or any oversight agencies.

43.    All of the aforementioned has created a climate where police officers and detectives lie to prosecutors and in police paperwork and charging instruments, and testify falsely, with no fear of reprisal.  "Informal inquiry by the court and among the judges of this court, as well as knowledge of cases in other federal and state courts, has revealed anecdotal evidence of repeated, widespread falsification by arresting police officers of the New York City Police Department.  Despite numerous inquiries by commissions and strong reported efforts by the present administration-through selection of candidates for the police force stressing academic and other qualifications, serious training to avoid constitutional violations, and strong disciplinary action within the department-there is some evidence of an attitude among officers that is sufficiently widespread to constitute a custom or policy by the city approving illegal conduct of the kind now charged." See Colon v. City of New York, et al, 2009 WL 4263362 (E.D.N.Y.) (Weinstein, J.).

44.    In Floyd v. City of New York, 08-cv-01034-SAS-HBP, Judge Scheindlin found that the City acted with  "deliberate indifference toward the NYPD's practice of making unconstitutional stops and conducting unconstitutional frisks" and adopted "a policy of indirect racial profiling by targeting racially defined groups for stops based on local crime suspect data." (Opinion and Order, dated August 12, 2013, P.13).

45.    The City is aware that all of the aforementioned has resulted in violations of citizens' constitutional rights.  Despite such notice, the City has failed to take corrective action.

This failure and these policies caused the officers in the present case to violate plaintiff's civil rights, without fear of reprisal.

46.     Plaintiff has been damaged as a result of the deliberate indifference of the Defendant City.

47.     As a result of the foregoing, the plaintiff is entitled to compensatory damages in an amount to be determined by a jury and is further entitled to punitive damages against the individual defendants in an amount to be determined by a jury.

WHEREFORE,  the plaintiff demands a jury trial and the following relief jointly and severally against the defendants:

a.     Compensatory  damages  in an amount  to be determined  by a jury;

b.     Punitive  damages  in an amount  to be determined  by a jury;

c.     Costs,  interest and attorney's  fees, pursuant  to 42 U.S.C.  §1988;  and

d.     Such other  and further relief as this Court  may deem  just and proper,  including injunctive  and declaratory  relief.

Dated:  New York, New York
          November 13, 2015                          By:    Steven E. Lynch

                                                    _____/s/_____
                                                    Steven E. Lynch
                                                    Attorney for Plaintiff
                                                    The Law Offices of Steven E. Lynch
                                                    233 Fifth Avenue, Suite 4A
                                                    New York, New York 10016
                                                    (T) (718) 858-8737
                                                    (F) (718) 690-3593
                                                    steven@stevenelynch.com